*Law Offices of*
***BONNETT, FAIRBOURN,***
***FRIEDMAN & BALINT, P.C.***
*2325 E. Camelback Road, Suite 300*
*Phoenix, Arizona 85016*
*(602) 274-1100*
*Wendy J. Harrison (014461)*
*wharrison@bffb.com*
*Ty D. Frankel (027179)*
*tfrankel@bffb.com*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| JAMES HAZELBAKER, on behalf of himself and all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY, a Rhode Island Corporation,<br><br>Defendant. | Case No. _____<br><br>**COLLECTIVE ACTION AND CLASS ACTION COMPLAINT**<br><br>**[JURY TRIAL DEMANDED]** |

Plaintiff James Hazelbaker, individually and on behalf of all others similarly situated (hereinafter referred to as "Plaintiff" and "Sales Agents" respectively) for his Complaint against Metropolitan Property and Casualty Insurance Company ("MetLife") alleges as follows:

**I. NATURE OF THE CASE**

1. Plaintiff brings this action against MetLife for its unlawful failure to pay overtime wages in direct violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (hereinafter "FLSA") and the Arizona Wage Statute, A.R.S. §§ 23-351, 23-353, and 23-355.

- 1 -

2. This action is brought as a collective action pursuant to 29 U.S.C. § 216(b) to recover unpaid overtime compensation, liquidated damages, statutory penalties and damages owed to Plaintiff and all others similarly situated. This lawsuit is also brought as a class action under Federal Rule of Civil Procedure 23, to recover unpaid compensation and treble damages resulting from MetLife's violations of the Arizona Wage Statute. For both collective and class action purposes, the proposed class consists of:

> Current and former MetLife Property & Casualty Specialists (aka "Sales Agents") employed by MetLife during the Liability Period.

3. For at least three (3) years prior to the filing of this action (the "Liability Period"), MetLife had and continues to have a consistent policy and practice of suffering or permitting its Property & Casualty Specialists (hereinafter "Sales Agents"), including Plaintiff, to work well in excess of forty (40) hours per week, without paying them proper overtime compensation as required by federal and state wage and hour laws. Plaintiff seeks to recover unpaid overtime compensation, including interest thereon, statutory penalties, reasonable attorneys' fees and litigation costs on behalf of himself and all similarly situated current and former Sales Agents who worked for MetLife. Plaintiff and all similarly situated current and former Sales Agents who may opt-in pursuant to 29 U.S.C. § 216(b) seek liquidated damages.

4. Plaintiff intends to request the Court to authorize notice to all similarly situated persons ("Sales Agents") informing them of the pendency of the action and their right to "opt-into" this lawsuit pursuant to 29 U.S.C. § 216(b), for the purpose of seeking overtime compensation and liquidated damages under federal law.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter and the parties hereto pursuant to 29 U.S.C. § 216(b), and 28 U.S.C. § 1331.

6. Plaintiff's state law claim is sufficiently related to the FLSA claim that it forms part of the same case or controversy. This Court therefore has supplemental jurisdiction over Plaintiff's claim under the Arizona Wage Statute pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in the State of Arizona within this District. Plaintiff was employed by MetLife in this District.

### III. PARTIES

8. At all times relevant to the matters alleged herein, Plaintiff James Hazelbaker resided in the State of Arizona in Yavapai County.

9. Plaintiff was a full-time, non-exempt employee of MetLife from in or around April 2002 until in or around April 4, 2011.

10. Plaintiff was employed during his tenure for MetLife as a MetLife Property and Casualty Specialist (aka "Sales Agent").

11. Plaintiff did not work for a predetermined wage but was paid on a commission basis.

12. Pursuant to 29 U.S.C. § 216(b), attached to and filed with this Complaint as Exhibit A, is the Consent to Become Party Plaintiff, signed by the above-named Representative Plaintiff, James Hazelbaker, opting him into this lawsuit.

13. Defendant MetLife is a Rhode Island corporation, authorized to do business in Arizona. MetLife sells insurance and related products.

14. Plaintiff and Sales Agents were employees as defined in 29 U.S.C. § 203(e)(1) and were non-exempt employees under 29 U.S.C. § 213(a)(1).

15. At all relevant times, MetLife was an employer as defined by 29 U.S.C. § 203(d).

/ / /

/ / /

## IV. FACTUAL BACKGROUND

16. MetLife is a Rhode Island corporation in the business of selling property and casualty insurance and other related products.

17. MetLife employs Sales Agents whose principal business is to sell MetLife insurance products.

18. Plaintiff and other Sales Agents are paid commissions. They also receive a semi-monthly draw of $500 per pay period.

19. Upon information and belief, Sales Agents are not paid at least $455 per week, or the equivalent amount for a period longer than one week, on a salary basis.

20. Upon information and belief, Sales Agents do not earn total annual compensation in excess of $100,000 per year.

21. The Sales Agents performed the primary duty of selling MetLife's insurance products while customarily and regularly performing their duties from a fixed MetLife branch office.

22. The Sales Agents did not exercise discretion and independent judgment as part of their employment at MetLife.

23. The Sales Agents sold MetLife products pursuant to strict MetLife policies that they were required to follow in executing the sales of MetLife products.

24. The Sales Agents are therefore non-exempt employees. They do not qualify for the administrative, executive, outside sales, or retail or service exemptions, nor do they qualify for any other exemption required to be proven by the employer under the FLSA.

25. Plaintiff was employed by MetLife as a Sales Agent from in or around April 2002 until in or around April 4, 2011.

26. As a non-exempt Sales Agent Plaintiff sold MetLife insurance products pursuant to strict MetLife policies.

27. Plaintiff customarily and regularly engaged in these sales transactions on behalf of MetLife from a fixed MetLife branch office.

28.     Plaintiff was paid commission based on his sales of MetLife insurance products, as well as a fixed semi-monthly draw of $500 per pay period. Plaintiff did not earn compensation that exceeded $100,000 per year and was not paid at least $455 per week, or the equivalent amount for a period longer than one week, on a salary basis.

29.     Plaintiff routinely worked in excess of forty (40) hours per week as part of his regular schedule as a Sales Agent.

30.     Plaintiff typically worked at least 60 hours per week during his employment at MetLife as a Sales Agent from in or around April 2002 until in or around April 4, 2011.

31.     Nevertheless, Plaintiff was not paid proper overtime wages at a rate of one and one half times his regular rate of pay for hours worked over forty in a work week in violation of the FLSA and Arizona Wage Statute.

32.     Upon information and belief, Plaintiff's duties, hours and compensation are indicative of the similarly situated Sales Agents.

## V. COLLECTIVE ACTION ALLEGATIONS

33.     Plaintiff brings his claim under the FLSA, 29 U.S.C. § 201 *et seq.*, as a collective action. Plaintiff brings this action on behalf of himself and others similarly situated, properly defined as:

> Current and former MetLife Property & Casualty Specialists (aka "Sales Agents") employed by MetLife during the Liability Period.

34.     MetLife's illegal overtime wage practices were widespread with respect to the proposed class. The failure to pay proper overtime was not the result of random or isolated individual management decisions or practices.

35.     MetLife's overtime wage practices were routine and consistent. Throughout the Liability Period, employees regularly were not paid the proper overtime wage despite working in excess of forty hours per week.

36.     Other Sales Agents performed the same or similar job duties as Plaintiff. Moreover, these non-exempt employees regularly worked more than forty hours in a

workweek. Accordingly, the employees victimized by MetLife's unlawful pattern and practices are similarly situated to Plaintiff in terms of employment and pay provisions.

37. MetLife's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable policies or practices and do not depend on the personal circumstances of the members of the collective action. Thus, Plaintiff's experience is typical of the experience of the others employed by MetLife.

38. The specific job titles or precise job requirements of the various members of the collective action do not prevent collective treatment. All MetLife Sales Agents, including Plaintiff, regardless of their precise job requirements or rates of pay, are entitled to overtime compensation for hours worked in excess of forty (40). Although the issue of damages may be individual in character, there is no detraction from the common nucleus of facts pertaining to liability.

## VI. CLASS ACTION ALLEGATIONS

39. The state law claims under the Arizona Wage Statute are brought as a class action under Federal Rules of Civil Procedure 23(a) and (b)(3). The class is defined in paragraph 2 above.

40. Throughout the Liability Period, MetLife has employed a large number of Sales Agents. The class is therefore so numerous that joinder of all members is impracticable. Members of the class can readily be identified from business records maintained by MetLife.

41. Proof of MetLife's liability under the Arizona Wage Statute involves factual and legal questions common to the class. Whether Defendants paid Class members the proper wages due in accordance with A.R.S. §§ 23-351, 23-353, 23-355 is a question common to all Class Members.

42. Like Plaintiff, all Class Members worked without being paid the statutorily required overtime wage. Plaintiff's claim is therefore typical of the claims of the class.

43. Plaintiff has no interest antagonistic to those of other Class Members and has retained attorneys who are knowledgeable in wage and hour and class action litigation. The interests of Class Members are therefore fairly and adequately protected.

44. This action is maintainable as a class action under Rule 23(b)(3) because questions of law or fact common to the Class predominate over any questions affecting only individual members.

45. In addition, a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The Arizona Wage Statute recognizes that employees who are denied their wages often lack the ability to enforce their rights against employers with far superior resources. Further, because the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation makes it difficult for members of the class to individually redress the wrongs done to them.

46. Plaintiff's Arizona Wage Statute claim is easily managed as a class action. The issue of liability is common to all Class Members. Although the amount of damages may differ by individual, they are objectively ascertainable and can be easily calculated.

## VII. COUNT ONE

**(Failure to Properly Pay Overtime Wages - FLSA - 29 U.S.C. § 207)**

47. Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

48. Plaintiff was a non-exempt employee entitled to the statutorily mandated overtime pay.

49. MetLife was an employer.

50. MetLife failed to comply with 29 U.S.C. § 207 because Plaintiff worked for MetLife in excess of forty hours per week, but MetLife failed to pay Plaintiff for those excess hours at the statutorily required rate of one and one-half times Plaintiff's regular rate of pay as required by the FLSA.

- 7 -

51. MetLife's failure to pay overtime to Plaintiff was willful. MetLife knew Plaintiff was working overtime but failed to properly pay overtime wages. MetLife had no reason to believe its failure to pay overtime was not a violation of the FLSA.

52. Plaintiff is entitled to statutory remedies provided pursuant to 29 U.S.C. § 216(b), including but not limited to liquidated damages and attorneys' fees.

## VIII. COUNT TWO

**(Failure to Pay Timely Wages Due - Arizona Wage Statute)**

53. Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

54. MetLife was aware of its obligation to pay timely wages pursuant to A.R.S. § 23-351.

55. MetLife was aware that, under A.R.S. § 23-353, it was obligated to pay all wages due to Plaintiff.

56. MetLife failed to timely pay Plaintiff wages he was due without a good faith basis for withholding the wages.

57. MetLife has willfully failed and refused to timely pay wages due to Plaintiff. As a result of MetLife's unlawful acts, Plaintiff is entitled to the statutory remedies provided pursuant to A.R.S. § 23-355.

## IX. REQUESTED RELIEF

WHEREFORE, the Plaintiff, individually and on behalf of all others similarly situated, prays:

A. For the Court to order MetLife to file with this Court and furnish to Plaintiffs' counsel a list of the names and addresses of all current and former Sales Agents for the past three years;

B. For the Court to authorize Plaintiff's counsel to issue notice at the earliest possible time to all current and former Sales Agents for the past three years immediately preceding this action, informing them that this action has been filed and the nature of the

1 action, and of their right to opt into this lawsuit if they worked hours in excess of forty
2 (40) hours in a week during the Liability Period, but were not paid overtime as required by
3 the FLSA;

4   C. For the Court to declare and find that MetLife committed one or more of the
5 following acts:

6     i. violated overtime provisions of the FLSA, 29 U.S.C. § 207, by failing
7 to pay overtime wages to Plaintiff and persons similarly situated who opt into this action;

8     ii. willfully violated overtime provisions of the FLSA, 29 U.S.C. § 207;

9     iii. willfully violated the Arizona Wage Statute by failing to timely pay
10 all wages due to Plaintiff;

11   D. For the Court to award compensatory damages, including liquidated
12 damages pursuant to 29 U.S.C. § 216(b) and/or treble damages pursuant to A.R.S. § 23-
13 355, to be determined at trial;

14   E. For the Court to award interest on all overtime compensation due accruing
15 from the date such amounts were due;

16   F. For the Court to award such other monetary, injunctive, equitable, and
17 declaratory relief as the Court deems just and proper;

18   G. For the Court to award restitution;

19   H. For the Court to award Plaintiff's reasonable attorneys' fees and costs
20 pursuant to 29 U.S.C. § 216(b);

21   I. For the Court to award pre- and post-judgment interest;

22   J. For the Court to award Plaintiffs' resulting consequential damages, in an
23 amount to be proven at trial; and

24   K. For such other relief as the Court deems just and proper.

## X. DEMAND FOR JURY TRIAL

26   58. Plaintiff, on behalf of himself and all others similarly-situated, hereby
27 demands trial of his claims by jury to the extent authorized by law.

- 9 -

DATED: March 26, 2013.

BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.

By /s/ Ty D. Frankel
    Wendy J. Harrison
    Ty D. Frankel
    2325 E. Camelback Road, Suite 300
    Phoenix, Arizona 85016
    Telephone: 602-274-1100
    Facsimile: 602-798-5860
    Attorneys for Plaintiff